*349 OPINION OF THE COURT
David Demarest, J.
In this proceeding under Civil Practice Law and Rules § 7801, Bruce Dix, Esq., Director of the Mental Hygiene Legal Service (MHLS), petitions for an order requiring Thomas Maul, Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), and Joseph Colarusso, Director of the Sunmount Developmental Disabilities Services Office (Sunmount DDSO), to comply with the provisions of Mental Hygiene Law § 47.03 allowing “access to investigative files and records pertaining to Sunmount resident Lynnette T.” Respondents oppose the relief sought. While the title includes Lynnette T. as a petitioner, the request for the information is clearly made by MHLS. Nowhere in the application does Lynnette T. independently seek the information, nor does MHLS provide any legal support that would grant Lynnette T. independent access. If such request for access were intended and/or inferred by the caption of the proceeding, any individual request by Lynnette T. for access to the information is denied.
Citing the provisions of Mental Hygiene Law § 47.03 (e), MHLS outlines its statutory mandate, in part, as “responsibility to take any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment.” Lynnette T. resides at Sunmount DDSO, a facility for the mentally disabled, in a regional intensive treatment unit, as a result of an involuntary retention. She was injured at Sunmount DDSO on August 8, 2005. She spoke with a MHLS attorney regarding the incident. On August 12, 2005, MHLS made a request to Sunmount DDSO for access to information regarding the investigation into the incident. Access was denied. MHLS then commenced this mandamus action under CPLR article 78.
MHLS claims: “Review of the Sunmount investigative file will assist MHLS in determining whether any additional steps need to be taken to safeguard the right of Lynnette T. to protection from abuse and mistreatment consistent with the statutory mandate of the Service (M.H.L. § 47.03[e]).” (Petition of Bruce S. Dix, Esq., verified Aug. 31, 2005, H 54.) MHLS’s letter memorandum, dated September 15, 2005, states: “[I]t may be that upon a review of the Ly[n]nette T. Sunmount investigative file, MHLS will decide no further action needs to be taken by MHLS either in relation to Ly[n]nette T. specifically or with respect to systemic issues bearing upon the care and treatment of residents.”
*350 In support of the relief sought, MHLS relies on the provisions of Mental Hygiene Law § 47.03 (d) which state, in part:
“The mental hygiene legal service in each judicial department of the state shall perform the following duties: . . .
“(d) To be granted access at any and all times to any facility or place or part thereof described in subdivision (a) of section 47.01 of this article, and to all books, records and data pertaining to any such facility or place deemed necessary for carrying out its functions, powers and duties. The mental hygiene legal service may require from the officers or employees of such facility or place any information deemed necessary for the purpose of carrying out the service’s functions, powers and duties. Information, books, records or data which are confidential and any limitations on the release thereof imposed by law upon the party furnishing the information, books, records or data shall apply to the service. Provided, however, whenever federal regulations restrict, or as a condition of federal aid require that a facility restrict the release of information contained in the clinical record of a patient or client, or restrict disclosure of the identity of a patient or access to that patient, to a greater extent than is allowed under this section, the provisions of such federal law or federal regulation shall be controlling . . . .”
The provisions of Mental Hygiene Law § 47.03 (e) contemplate that MHLS will “initiate and take any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment, which may include investigation into any such allegations of abuse or mistreatment of any such patient or resident.”
Respondents oppose, claiming, in part, the information sought is protected by Education Law § 6527 (3), which states:
“No individual who serves as a member of. . . (b) a committee having the responsibility of the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law . . . when such committee, subcommittee, society, organization or individual is performing any medical or quality assurance review function including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, either described in clauses *351 (a) and (b) of this subdivision, [or] required by law . . . shall be liable in damages to any person for any action taken or recommendations made, by him within the scope of his function in such capacity provided that (a) such individual has taken action or made recommendations within the scope of his function and without malice, and (b) in the reasonable belief after reasonable investigation that the act or recommendation was warranted, based upon the facts disclosed.
“Neither the proceedings nor the records relating to performance of a . . . quality assurance review function . . . including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law. No person in attendance at a meeting when a . . . quality assurance review . . . or an incident reporting function described herein was performed, including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be required to testify as to what transpired thereat. The prohibition relating to discovery of testimony shall not apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting” (emphasis added).
Respondents also point to Mental Hygiene Law § 29.29 to support their position that the information requested by MHLS is not subject to disclosure. Mental Hygiene Law § 29.29 outlines the procedures to be established and followed by OMRDD when there are reports of “accidents and injuries affecting patient health and welfare at such departmental facilities.”
“These policies and procedures shall include but shall not be limited to:
“1. The establishment of a patient care and safety team at the facility level which shall include but not be limited to a: physician, nurse, social worker and therapy aide, to investigate and report to the facility director on:
“(i) suicides or attempted suicides;
“(ii) violent behavior exhibited by either patients or employees;
*352 “(iii) frequency and severity of injuries incurred by either patients or employees;
“(iv) frequency and severity of injuries occurring on individual wards or in buildings at such facility;
“(v) patient leave without consent; or
“(vi) medication errors.
“2. The establishment of cumulative record keeping of incident reports which identifies patient and employee involvement.
“3. A compilation of uniform and measurable information, first on a facility basis, then on an office-wide basis, that will indicate where the greatest number and types of incidents of violence and injury occur . . .
“6. Such commissioners shall promulgate regulations establishing standards for the protection of children in residential care from abuse and maltreatment ...” (Mental Hygiene Law § 29.29).
This section of the Mental Hygiene Law does not, however, address disclosure, or nondisclosure, of the investigative reports of incidents.
Respondents also rely on 14 NYCRR part 624, the “regulations implementing the statutory scheme” of Mental Hygiene Law § 29.29, seeming to suggest that since 14 NYCRR part 624 imposes requirements upon OMRDD facilities to investigate and report allegations of patient abuse, including but not limited to, instances where there is an injury, MHLS is not entitled to disclosure of the investigative reports and materials.
14 NYCRR 624.5 (c) (5) states:
“OMRDD has, pursuant to statute, the right to review and/or investigate any reportable incident, serious reportable incident, and/or allegation of abuse regardless of the source of the information. All relevant'records, reports and/or minutes of meetings at which the incident or alleged abuse was discussed shall be made available to reviewers or investigators. Persons receiving services, staff and any other relevant parties may be interviewed in pursuit of any such review or investigation. Such reviews and/or investigations include those conducted by a DDSO. OMRDD shall ensure confidentiality.”
The subsequent paragraph states:
*353 “(6) Reportable incident, serious reportable incident, and abuse records and subsequent reports or documentation of investigations shall be maintained so as to protect the privacy of persons receiving services, anyone else involved, or others whose names may appear in the report. Such records shall be retrievable by the person’s name and, if used, filing number or identification code.”
While respondents attempt to make a distinction between incident reports and investigative reports, there is no such distinction in any of the relevant statutes or regulations. This argument is made by respondents in the portion of their letter memorandum denying an established protocol between MHLS and OMRDD for the sharing of information. The existence or nonexistence of a “protocol” is irrelevant for the purposes of determining the issue in this proceeding.
Both parties cite Katherine F. v State of New York (94 NY2d 200 [1999]) in support of their respective positions. The Court of Appeals recognized the language of Education Law § 6527 (3) as a clear exemption of certain types of documents — including reports made pursuant to Mental Hygiene Law § 29.29 relating to the investigation of an incident — from the discovery provisions of article 31 of the CPLR. This was done with the intention of promoting “the quality of care through self-review without fear of legal reprisal.” (94 NY2d at 205.) In this case, MHLS’s request for information was not made in the context of discovery during civil litigation. The request is made as provided for by law, i.e., Mental Hygiene Law § 47.03, which contemplates access. Respondents argue, “To give broad, general disclosure provisions of M.H.L. § 47.03 (d) precedence over the specific, thorough, yet narrow provisions of [Education Law] § 6527 (3) would undercut the purposes underlying the . . . investigative process without in any significant way furthering the laudable purposes and goals of MHLS.” This argument fails to account for the plain language of both statutes.
The “immunity” afforded, and the prohibition against CPLR article 31 disclosure, in Education Law § 6527 (3); the regulations implementing the investigative duties of OMRDD; and the provisions of Mental Hygiene Law § 29.29 authorizing OMRDD to investigate reports of “any reportable incident, serious reportable incident, and/or allegation of abuse” do not prohibit disclosure to MHLS of the information involving those investigations and reports. Nor can the provisions be read, as suggested *354 by respondents, as restricting MHLS’s access to the investigative information. To be sure, respondents correctly point out that “even if the Court were to compel production of investigative materials . . . there would be no witness who could be subpoenaed ... in a subsequent civil proceeding to lay the proper foundation for the admission of such investigatory materials into evidence.”
MHLS’s mandate is broad. Mental Hygiene Law § 47.03 (d) includes a grant of access “to all books, records and data pertaining to any such facility or place deemed necessary for carrying out its functions, powers and duties.” MHLS “may require from the officers or employees” of an OMRDD facility or place “any information deemed necessary for the purpose of carrying out the service’s functions, powers and duties.” (Mental Hygiene Law § 47.03 [d].) Broad oversight authority notwithstanding, access to information is not unfettered. MHLS is bound by the confidentiality of, and limitations on release of, “information, books, records or data.” While MHLS is statutorily authorized to review the records of Sunmount and OMRDD in carrying out their duties, MHLS must maintain the confidentiality of the records.
MHLS is granted access to all Sunmount DDSO and/or OMRDD records of the Lynnette T. incident and investigation to assist MHLS in determining whether any additional steps need to be taken to safeguard the right of Lynnette T. to protection from abuse and mistreatment consistent with the statutory mandate of the service (Mental Hygiene Law § 47.03 [e]). MHLS shall not further disclose the information contained in the investigative reports and underlying documentation.